Good morning. My name is Charles Kagey. I represent the Price Objectors, who are appellants in No. 0516107, and I represent Price Counsel, who are appellees in No. 0615301. Clarify some numbers for me. If I understand it right, the plaintiff's lawyers here wound up after it was after the remand and the second decision by the district judge with about $2.4 million plus $300,000 in costs, and the objectors, who objected to the plaintiff's lawyers' attorney's fees, wound up with about $154,000 in attorney's fees plus $2,000 in costs. Am I right so far in rough numbers? Well, you're right with respect to the fees plaintiff's counsel got after remand. That's what I asked. And the fees that objectors' counsel got before remand that were then reaffirmed by the court. That's what I asked. So that's what everybody winds up with at the end of it all, unless we change it? No, because after remand, there was the proceeding that finally cut back the plaintiff's counsel's fees. I thought that cut them back from about $6.7 million to $2.4 million. Right. And on that, the price counsel was awarded $1.2 million, approximately, in fees. So the price counsel... It's hard for me to keep straight. There was one – there was the management group. They were attacked by a group whose fees the remand said to cut. And then there was another group that objected to the fees. That's right. And I keep getting the names mixed up. Okay. Well, the purposes of this appeal, the plaintiff's counsel are the ones who brought the original securities action. I know that. And they wound up with $2.4 plus $300. That's correct. Actually, and then there was an offset for some interest. So... We don't have to account for interest right now. That's not on this appeal. Now, what about the lawyers who objected to their fee and got it cut from $6.7 million to $2.4? How much did they get? Before the first appeal, they got the approximately $150,000, $170,000, which was questioned on the first appeal and then was reestablished. After the appeal, for the work they did in the appeal and after the appeal, they were awarded $1.2 million. And that's what's being brought up in the 06 appeal. So it's $2.4 million and about $1.6 million? No, about $1.35. About $1.3 million? Correct. And the $1.3 million is for the ones who got the fees cut from $6 something to $2 something? That's correct. Okay. Thanks. Now, I guess I will begin with the 05 appeal, which is the appeal of the price objectors to the fee that was awarded to Plaintiffs' Counsel. And I'm not sure whether the Court wants me to address both appeals here or the second one. Help me a little more with the numbers. The lawyers that wound up with $2.6 million, how much did they – how many millions under the district court's findings did they benefit their class? Well, the Court didn't make any findings on that at all. The Court decided – I thought it did. I thought it said the price of the stock went up. Part of it was due to the market, but part of it was because they shot down the 96 deal. Right. And the point of the first appeal was there was no way to determine what part of that was benefit conferred by Plaintiffs' Counsel and what part of it was just due to market appreciation. So it was impossible to calculate a dollar figure for the benefits. And that's why on the first appeal, at our urging, this Court said that you'll only award a lodestar fee and not a percentage fee. And so either before or after remand, there was never a calculation of a dollar figure of what the Plaintiffs' Counsel benefited the class. So did everybody wind up with lodestar? Everybody wound up with lodestar. All right. So are we just deciding now whether the district court awarded lodestar fees for things that were past the 96 success and was not allowed to under the remand or whether it awarded lodestar fees for after the 96 success and the remand didn't preclude them? Is that our only question there? That is almost the only question on the 05 appeal, on the appeal that we brought. Well, on the 05 appeal, in the first case, we were mad because we said the percentage basis of awarding the fees was inappropriate and said let's do it by lodestar on remand. So when the district court engages in a lodestar analysis, why isn't it entitled to look at all the hours that it deems relevant to the inquiry? Because that was also an issue decided in the first appeal. Well, I don't quite see it that way. I mean, now we have to, a different panel had it, but we, the way I read that opinion, it said it was related to the 96 agreement, but it also said, you know, we didn't confine the district court on remand as we might. You said do it by lodestar. The district court went back and said, okay, let's apply the lodestar method and examine what we think the benefit has conferred. I would respectfully disagree. On the first appeal, this Court said, because it was the case, that the fee in the court, in the district court had been awarded, quote, in return for plaintiff's counsel work in opposing the 1996 plan. That's at page 1119. Right. It also said at 1124, quote, the district court was convinced that plaintiff's counsel should be awarded fees for preventing the 1996 plan from being implemented. Right. So we got here. No, but that's just a recitation of what happened. That's a recitation of what happened below, and that's what was before this Court. Now, we argued that there should be no fees for stopping the 1996 plan, and we lost that. We understand. Right. And that's not on this appeal. We argued that it should not be a percentage fee. It should be a lodestar, and we won that. And that's established, and that's not on this appeal. The plaintiff's counsel argued that the district court had made a mistake, and the mistake it had made was in confining the fees to the 1996 plan. Page 1124, what this Court said was being argued and decided was, quote, plaintiff's counsel argued the district court's finding that the settlement conferred no benefit on the class vis-à-vis the 1997 plan was without any factual support. They contested that finding. They also, quoting from 1124 to 1125, quote, they also argued the district court ignored other benefits of the settlement. So in the first go-around, the district court confined it to 1996, and that was the subject of a cross-appeal brought by plaintiff's counsel. And this Court rejected that. They said that that finding was not erroneous. We're going to uphold the finding that it should be confined to 1996 and not go anything beyond 1996. It didn't say don't go beyond 1996 anywhere explicitly. Well, you know, the problem is, you know, when we try to be – if we're going to be specific with district courts, fine. If we're going to leave something open in the mandate, it's hard to fault the district court if it goes beyond the parameters of the general remand. And here we said go calculate the hours. Now, if we said, well, the percentage is wrong, confine it to the finding, that would have been – and the district court engaged in a lodestar analysis. If they had adopted plaintiff's suggestion and reassessed the percentage, I think you'd have a good claim. But it's hard for me to see whether they really violated the mandate, or the district court violated the mandate in this case. I've given now the setup to the Court's conclusion. And now what the Court's conclusion was after these points, after accepting our appeal with respect to the lodestar and rejecting the appeal of going beyond the 1996 plan for the fees, the exact instructions given to the district court were, quote, on remand, the district court is instructed to award plaintiff's counsel fees computed using the lodestar methodology for work undertaken in opposition to the 1996 plan. The next sentence is, similarly, district court must only allow costs arising from the opposition of the 1996 plan. Must only allow the costs. Well, they've been awarded costs for everything after 1996. It's not only for 1996. And if they're awarding fees for after 1996, then that's not similar to the order for the cost. I mean, it was very clear when they wrote these two sentences what was contemplated by this Court. Aside from the individual sentences, then, your argument is they already had their shot at post-96 fees, and they lost in the previous appeal. That's right. And we didn't just say recalculate them. We said don't award them. That's right. That is our position. And we take it directly from the text. You said recalculate the pre-'96 and don't award the post-'96. Is that the argument? That is the argument. Okay. And that's taken directly from the language of the decision. Now, our subsidiary argument is that if the Court were allowed to go and look at the 1997. And the word only at the top of page 1125 is you're using that to support your theory that what we meant by only was only. Yes. I mean, that's the conclusion the Court came to. But it follows directly from what was before the Court, which I explained a little earlier in the argument. Yes. That was the issue before the Court. The other one is the other point I want to make is that if the district court was allowed to award fees after 1996, it had to identify the benefits for which it did that. And as we laid out in some detail in our briefs, it was very circumspect in not saying what the benefits were for which it awarded the fees, which is very important in this case because it was clear that the whole point of the lawsuit was to stop the 1997 plan. And the district court found it was a detriment to stop the 1997 plan. So it was awarding fees for work cleaning up after a lawsuit that hurt the class. And yet the Court says it says generally it appears that the class was benefited. But despite our urging, the Court never said what those benefits were. It just very vaguely said plaintiffs' counsel argue one thing, price counsel argue something else. It isn't really important. There are benefits. Therefore, award fees. And unless we know what the benefits were, we can't say whether the Court abused its discretion, and we can't say whether it made it a factual error in finding those benefits because, again, I don't know what the benefits were. I might be making a factual argument, but since it didn't identify benefits, I can't say that it made a factual error. It's a legal error not to identify what the benefits were. And those are our two arguments in that appeal. Perhaps I should go on. I had understood it differently. I thought you were saying that the district court had made a finding that there were no benefits after the 1996 plan, and we said we are not convinced that the district court's findings with respect to the 1997 plan are clearly erroneous. That's correct. So what that means is they stand and they're over. Before the first appeal, the district court made the finding there were no benefits after the 1996 plan. This Court affirmed that finding because it was directly across the field to it. When we went back, the district court found the other way. It found that there were benefits after 1996, but it never identified them. And so I can't argue whether it was right or wrong, if it's even allowed to make that. I think it's not allowed to make that. If the Court was allowed to make that, I can't argue if it's right or wrong because I still don't know what those benefits were. And that's our argument, the second argument with respect to the second appeal. Perhaps I should reserve my time to respond on the other appeal. Thank you, counsel. Thank you. My name is Jonathan Bass. I'm going to be responding to counsel's argument on their appeal of the fee award to class counsel. And then I'm going to be presenting the argument affirmatively on the appeal of the award to price counsel. And if I get the numbers right, that the lawyers who opposed the deal, the company originally struck got $2.6 million at the end of it all, and the lawyers who opposed the attorney's fees got $1.35 million at the end of it all? If you're including fees and costs all in, those numbers are pretty close to right? Rough is what I'm asking. Absolutely. Yes. Now, let me ask you a question here about the mandate, the previous decision of our court. Yes. It looked to me, it's written a little elliptically, but I'm not sure that it's open. It looks to me as though what we were saying in the previous decision in 2002 was that the district court had made a finding that the And then we went through whether that finding was clearly erroneous, and we said we're not convinced that it is clearly erroneous. And then we said award plaintiff's counsel fees computed on the Lodestar methodology for work undertaken in opposition to the 96 plan and must only allow costs arising from opposition to the 96 plan. Now, in that last couple of lines, it doesn't add a sentence saying don't award fees or costs after the 96 plan. But what I'm wondering is why we shouldn't infer that, infer that that's what the court meant, not only from the word only in the cost sentence, but also from the fact that what we were reviewing was a district court determination that there was no benefit vis-à-vis the 97 plan. I think the reason in part that the mandate is, I won't say inscrutable, but To me it wasn't that inscrutable. It was just not well written. Well, what the court was doing in Wininger 1, this court, was addressing two separate appeals. And I think it's useful to try to unpack those two appeals. What the – what I'll refer to as the price objectors, they appealed from Judge Wilkins' percentage of the benefit fee award, in which she awarded a percentage, about 6 percent, of the common fund to class counsel. What the price objectors argued in the Ninth Circuit was that the – well, first, there was no common fund. The court rejected that argument. But what they argued successfully was that it was not possible on the record to quantify precisely the portion of that settlement fund which could be ascribed to the work of class counsel. I don't think that's all they said. No, no. And there's a footnote where they're outraged at how much money is being claimed and saying it's really unreasonable and also saying there's no clear error in the district court's determination of no benefit after 96. Right. Let me focus on that. The discussion in which the panel said, we're not prepared to say that Judge Wilkins was clearly erroneous in finding that the sale conducted pursuant to the settlement was not materially better in terms of share price than could have been obtained under the 97 plan. That was their disposition of the cross appeal by class counsel. The cross appeal by class counsel was essentially this. The district court awarded a 6 percent of the common fund. That was an abuse of discretion because she failed to appreciate the tremendous economic benefit that we provided for the class. You asked earlier whether there was any quantification of benefits. It's not entirely true to say that there wasn't. The 96 plan, which was successfully defeated, contemplated a $13 a share purchase price. That would have worked out to about $70 million. Under the settlement, there was a $33 per share settlement. Let's see. $13 a share and it amounted to how much? 70? 70. 70 million? Under the settlement, the company sold at $33 a share, $188 million. What Judge Wilkins said was, well, that $33 is pretty close to what the expert testimony I accept with respect to what would have happened under the 97 plan, $30. And so I'm not going to find that that $3 differential is important. Well, I think she didn't just say close enough for government work. I think what she said was you can't really sort it out as a benefit conferred by the attorneys as opposed to a benefit conferred by the market. That $3. That $3. But I wanted to put it in context that the benefit of the litigation writ large was, by any measure, over $100 million, because the 90s the defeat of the 96 plan generated that benefit. Now, when the panel in Winninger 1 said, we see that class counsel in their cross appeal, in their debate of whether they got enough money, are taking Judge Wilkins to task for not recognizing this benefit, there was a line in there. There's a line in that portion of the opinion. And it says, oh, and by the way, class counsel also point out these other benefits of the settlement, which Judge Wilkins on this go-around said were benefits. The Ninth Circuit didn't say in Winninger 1, we don't believe that. I think what it said, my inquiry is focused a little differently. Here's the way it looked to me. And the record is so complicated, I want you to educate me if I'm misunderstanding. It looked to me as though shooting down the 96 plan was really valuable to the class. The lawyers who did it were entitled to get paid for it. The appeal decision said so, but it said, use the loathe star. You're overpaying. Correct. Beyond that, the district judge really didn't see benefit. There's a lot of work involved. It looked to me like a lot of the work was basically, after the settlement was done, doing a collusive class action in order to preclude further objection, to just get the settlement wrapped up. And the numbers in the settlement were the inevitable consequence of the successful destruction of the 96 plan. Let me try to answer that. The insider deal in 96, it's really going to leave the limited partners with a short end of the stick. You shoot it down, confer a lot of benefit. And there was litigation about how much the plaintiff's lawyers are entitled to for conferring that benefit. After that, it looks as though the district judge in the first go-around says no benefit. We say that's not clearly erroneous. And I can't see that it is clearly erroneous. There's certainly work, but that's not the same as benefit. And a lot of the work looks like it's just to seal the thing and nail it down and make it final with a class action after a deal is already made. What the Ninth Circuit said when they affirmed Judge Wilkin's ruling about no benefit again, as I read the opinion and as I read what she then says in her February 05 order, the Ninth Circuit was saying we don't find Judge Wilkin committed clear error in dismissing the possibility of benefit from this $30 versus $33 distinction. The Ninth Circuit did not say that there were not other material economically real benefits from the settlement. And when the matter came back down to Judge Wilkin, the price objectors, of course, made this argument. Why wouldn't they have been litigated the first time if there were? Because it didn't matter. Here's why it didn't matter, Your Honor. When Judge Wilkin issued her first fee award to class counsel, she gave them the 6 percent, the percentage of the benefit of the common fund. It didn't matter in that context whether particular elements of the settlement conferred particular portions of value on the class, because the philosophy and the action that Judge Wilkin took then was to say, all in all, taking everything into account, I find in my discretion that class counsel is entitled to 6 percent of the common fund, about $6.8 million. It went up on appeal. And in Wininger 1, what the panel said is, we don't want Judge Wilkin to award fees to class counsel based on a percentage of the benefit because of this problem, because of the problem that we can't quantify the portion of that common fund that we can ascribe to the virtues of class counsel's work. So go back to the lodestar. That's number one. In that fee award, in that original fee award, Judge Wilkin was not called upon to think about or to decide or to say anything about these other benefits, nor, and I think this is important. But she made a finding, and we said it wasn't clearly erroneous. It's kind of like finding in a multi-defendant case, this defendant did not proximately cause any damages. And if we reverse for something else, it doesn't mean that there's a do-over on everything in district court. I think that's not what she found, Your Honor. And there are two reasons I say that. It's not what she found because, A, it wasn't what I'm talking about now, this trio of benefits to the class from the settlement, apart from the $3 differential. I'll talk about them in a second. But it's not what she found. Because Judge Wilkin found them here in October 2004 and February 2005. She said there were these three benefits. And, but it didn't, she never said, she didn't say back originally, years earlier, that those weren't benefits. It just wasn't addressed. But in the cross appeal, when class counsel were suggested, were arguing to the Winninger 1 panel, she didn't give us enough money. They did advance the argument. They said, well, wait a minute, there were these other benefits she didn't take into account, she didn't focus on. In the opinion, in the panel's opinion in Winninger 1, the Ninth Circuit referred to that argument. They never disposed of it. When they said, we don't find that Judge Wilkin was clearly erroneous in finding that the settlement was not clearly better than the 97 claim, what they were saying and this is clear from the text in Winninger 1, what they were saying is, we don't find Judge Wilkin's factual determination based on the expert submissions that the $33 a share purchase price for the settlement was materially better. What do you do with this line, settlement conferred no benefit? It's in the second column on 1124, about eight or nine lines down. I have a different. I'm looking at F3, page 1124, 1, 2, 3, 4, 5, 6, 7, 8, 9, 10th line. That begins where, on cross appeal? Exactly. This is exactly what, this is the passage I wanted to call to your attention, Your Honor. What they're saying here is, now let's look at the class counsel's cross appeal. They're unhappy that they only got 6 percent. They wanted 25 percent. And here are the arguments they're making. They're saying that Judge Wilkin's determination, and understand, her determination was this $33 versus $30 controversy. And what the Winninger 1 is saying is the district court judge, whether we would have made the same decision or not, the district court judge found, based on the expert submissions, that that $3 differential is not clearly attributable to class counsel. There's one sentence, and this is what I, if you look at the bottom of that, the end of that paragraph, the panel says, they, that's class counsel, also argue the district court ignored other benefits of the settlement, such as the fact that the transaction costs were picked up by the purchaser from that school. In other words, class counsel made the argument in their cross appeal that the district court simply didn't address this. Well, it looks to me like they didn't just not address it. They didn't buy that there were other benefits. They rejected it. No. With respect, Your Honor, Judge Wilkin didn't reject it. She did not address it. And what the Ninth Circuit says in resolving the cross appeal is this. They have this one line in which they refer to class counsel's argument. But what they say when they affirm as not clearly erroneous Judge Wilkin's ruling is this $30 versus $33 controversy. I see nothing in Wininger 1 in which the court of appeals says, by the way, we've looked at the record on these other benefits, and we find, A, that Judge Wilkin rejected them as part of her ruling, or that we reject them, whether or not she rejected them. And I think it's true. Your argument is that she, she rejects and then the court adopts the rejection of the benefits in the 1997 plan. She accepts it on the 1996 plan, and there's no finding of what happens in between other benefits. Is that right? It's not a matter of in between. The benefits of the settlement come after the 97 plan is withdrawn. What Judge Wilkin says in her order in February of 2005. I misspoke in saying in between, but the. Here's the nut of the argument, I think. Did Wininger 1 tell the district court, don't award class counsel any fees for anything they did after the 96 plan was withdrawn? That's, that's the construct, that's the argument that Price counsel makes. It's the argument, of course, they made to Judge Wilkin. It's, it is not what the mandate says. The mandate says, award counsel fees for work in opposition to the 96 plan. Don't award them compensation for opposing the 97 plan. That's the mandate to Judge Wilkin. Now, what Judge Wilkin recognized, having lived with this case throughout its entire history, is that, well, there's another piece here. In what she says in her February 2005 order, this is at the appellant's excerpts of record, tab 586, page 9. This is her February 2005 order. She's responding to, and she summarizes the Price counsel's argument on the mandate. And what Judge Wilkin says, in the quotation cited by the Price intervener, quotation from Wininger 1, the Ninth Circuit was addressing this court's decision to award fees calculated as a percentage of the monetary funds. The court, the district court, does not read the Ninth Circuit's mandate as excluding a reevaluation of benefits plaintiff's counsel's services conferred on plaintiffs in the context of recalculating the fee award using the lodestar method. The court concludes that not only did plaintiffs benefit from the defeat of the 1996 plan, but they also benefited from some of the mills firm's continued efforts. Judge Wilkin is saying, I don't believe the Ninth Circuit told me to ignore these other benefits conferred on the class by the class counsel, even aside the defeat of the 1997 plan. I'm not going to give you any money for that, she told us. You get nothing for that. What she said was, I don't read, I can't read the mandate as preventing me from looking at the record, looking at the submissions, and deciding now. Because, again, I'll say parenthetically, this was the first meaningful occasion for Judge Wilkin to think about this issue, to think about, in the context of a lodestar fee award, whether there were specific items of benefit on the class. I'm confused about something. It looks to me from her wording as though she is talking in between, not after. We seem to have said no on the 1997 plan, and what she says is we were not addressing the legal work that preceded, that means before, the presentation of the 1997 plan. But it looks as though we were. I'm not sure where you're going. I'm at the page you told me to look at, page 9 of tab 586, in the last full paragraph. Oh, I see. Well, yes, what she's saying is that Winninger I told me not to award any compensation to class counsel for defeating, if you will, the 1997 plan. I'm not going to do that. They didn't tell me not to award compensation to class counsel for work done up to that point, and they didn't tell me to refuse categorically to consider benefits and, therefore, And what she says in this order is there were three benefits. I know counsel doesn't like to visualize them, but she says there were three benefits, and what the record suggests is that those benefits add up to about $20 million in real monetary virtues for the class entirely apart from this $3 differential between the 1997 plan and the settlement. It has to do with a general partner's release of its capture after the priority return. That was about $16 million. It has to do with the invest corpse, the buyer shouldering the sale costs. It's about $3 million. It has to do with the burden of attorneys' fees being borne by the partnership rather than just the limited partners. This is close to $20 million in benefits, and what Judge Wilkin is saying, she doesn't do the math, but it's in the record. She says these are benefits. I'm going to compensate class counsel for this. I think as a district court judge it's incumbent on me to do that, and I don't read the mandate as telling me I can't. Counsel, you're over time, but I'm not going to just cut you off right now. Just finish up in a sentence or two. I will. Well, let me devote a sentence or two to our appeal, if I may. I'm happy to, unless you have more questions. Everything is preserved, of course, and we've studied it. I understand that. Let me just say two things about our appeal of the $1.3 million award to Price Counsel. I think there were two interesting issues that it presents. And, actually, there were a couple of more interesting issues we got. There are a lot more, but your time just winded up. Exactly. And in our supplemental letter brief, I said that this case is a bit like Zucker and I said this case is easier. I didn't – this was before I knew who the panel was, of course. But here's our – the core of our ratings about the award to Price Counsel. Price Counsel wrote to everybody in the class and said, We're available to represent you. We will charge you $200 a unit. Now, there are about 800 units in this limited partnership. $200 per unit, however many units you have or fractional units you have, that's it. That was the only communication to the class on this subject. They did a lot of work. They came back at the end of the day and said to Judge Wilkin, Award us several million dollars. She eventually awarded about $1.2 million in fees plus costs. We said, well, wait a minute. We think the class has to be told about this. They were led to believe that this collateral piece of the litigation was not going to cost them. If they signed up, they'd have to pay their $200 a unit. But then they didn't. Counsel, you're picking up on another argument, and we have it in the briefs. I think I'd better bring it to a close unless my colleagues have questions. I just have one unrelated question. We don't chat ahead of time, but I'm going to ask this to your opponent, too. It seems to me this has gone on a long time. Would the assistance of the circuit mediator be of interest to either of you? It doesn't affect your answer, but don't you want to get paid now, both sides? We could go on for two more years. There are a whole lot of issues that we haven't even discussed, some of which may or may not require remand. Is that of interest to you? I will say, Your Honor, we have the enthusiastic assistance of Pete Sherwood, one of the mediators, and here we are. Clearly, my clients would like this thing to be put to rest, and I don't know what I can say beyond that. Thank you. Thank you, counsel. Counsel. Thank you. Just to wrap up very briefly on the 05 appeal, I simply cannot agree with Mr. Bass's assessment that this Court stated the arguments that plaintiffs' counsel were making on their cross appeal, that the settlement conferred value, that the district court failed to recognize the three benefits, and then affirmed, and in the course of doing so, didn't consider the arguments. This Court did consider the arguments that it stated in its opinion. Well, we don't know. That's the tough part about this, is that the opinion wanders around a lot of different topics, and there's a plausible – your interpretation is plausible, their interpretation is plausible. I guess what I'm looking at is, was the district court's construction of the mandate impermissible? And that's a different question. Right. And I would also point the Court to, I believe, Judge Thomas referred to footnote 8, where it found that the fee was unreasonable because it was comparing the fee to the hours worked on the 1996 plan. That was the touchstone, and it wasn't comparing it to hours worked after the 1996 plan. So it was clear that the panel wanted it to be compared to 1996 work, and that was the measure of how much should be paid in fees. Finally, I'm still surprised by Mr. Bassett's argument because, as we point out to some length in our briefs, there was a petition for rehearing, and plaintiffs' counsel are in complete agreement with this. It's absolutely clear, according to them, and we agree, that the panel's decision in the first appeal absolutely prohibits any award of fees beyond the 1996 plan. That was all over the petition for rehearing, and the Court was unmoved. It did not change its opinion in face of that very strident argument on behalf of plaintiffs' counsel. The petition for rehearing asked for some clarification on do you mean we don't get anything after 1996? No, it didn't ask for clarification. It said this opinion absolutely will prohibit the district court from awarding anything after 1996. Oh, so the petition for rehearing said this is what you said to us. We don't get anything after 1996. They said it over and over and over again. And they said you have to change the opinion because it would be disastrous if we go back. We will only get fees in the 1996 plan. The petition is – the entire petition is in the record, and it's cited in our brief. Moving to the appeal of our fees, I think maybe I should just briefly begin by saying there's something I have to respond to that was in the reply brief we didn't get to respond to. And this went to the issue of the due process issue and the argument that the due process issue was precluded by the law of the case doctrine. We argue that because the due process issue, all aspects of it were decided before the first appeal and the fee award survived the first appeal, the law of the case prohibits any further consideration of the due process issue, even regardless of its merits. And the response we heard – we saw in the reply brief was, but we never appealed the first fee award to price counsel. And that's simply not true. The fee award to the price counsel was contained in the supplemental judgment of September 6, 2000. That's supplemental excerpts of record 462. And that is the judgment that plaintiffs appealed without any reservation or hesitation. And that notice of appeal is in the supplemental excerpts of record at 475. Would it even matter? I thought you appeal what you appeal. And if you don't appeal something, it stands. And that's the end of it. You can't save some issues. I agree. I agree. And that's our next argument, that whether they appealed it or not, they had the opportunity to appeal it. And they had the opportunity to make that argument. And they didn't do so. And that makes it the law of the case. But the due process issue doesn't have any merit anyway. And I think the Court's request for letter briefs brought that out very effectively. I think it must be unusual for the Court to ask for letter briefs and to get back letter briefs from both sides. And they both say almost exactly the same thing. Both sides said that there is standing to address the due process issue for the very reason that once a class representative is appointed and class counsel is appointed, they represent the class for all issues. That's what we said. That's what they said. And I'm sure that's the law. And that's the whole point of a class action. But that being the case, there can't be a due process issue. There's no problem of not giving notice to the class individually, class members, because we have a class representative who's supposed to represent them. And in this case, there certainly was vigorous representation. There's no question a notice was given. There isn't a due process problem in a class action, as long as the plaintiff's counsel is vigorously representing the class without a conflict. And there's no conflict on this issue. There was early in the case a solicitation for some class members to sign on as clients of the Bodie firm. And they were told the consequence of signing on to that was you'd have to pay $200. And no more than $200. But as the district court found the first time around and the second time around, there was never a representation with regard to common fund fees for the class as a whole. Later on, in a different representation where we're not representing those 300-some people who did sign up, six limited partners asked the Bodie firm and our firm to proceed without compensation to represent the six of them as objectors to the fees. And we did so. And we conferred a $5 million plus benefit. And there's no prohibition on being awarded those fees. I think the only other question on the appeal of our fees had to do with the court's exercise of discretion. And, of course, the court has very broad discretion in deciding what common fund fees should be. And the argument that has been made is that the district court abused its discretion by not slicing and dicing the work that we did and going basically argument by argument and page by page basis in deciding which day of work should be compensated and which day of work should not be compensated. The fact is we did only one thing. We opposed plaintiff's counsel's fees. And we were very successful at that. We got cutbacks from $7 million to $5 million. They went back and asked for $13 million. And we got it down to $2 million. And if you go through, you will find arguments that we made that were not successful because we made multiple arguments. We were trying to vigorously represent the class and to bring them whatever benefit we could. And we were not going to hold back on good faith what we thought were meritorious arguments, even though there was a chance they might lose, because we wanted to give the best possible representation of the class. And that's what we did. And that's what this Court said in the petroleum products case. You don't go back and say, well, one argument won, one argument lost, and therefore we can cut the fees here or cut the fees there. The fact is that overall we did one thing. We opposed the fees. And we did it successfully. We got an unmultiplied load star for doing so. And there was no abuse of discretion. Thank you, counsel. I wonder if I should address the question of the ---- Yes, if you don't mind. Do you feel that the assistance of the mediator's office would be futile at this point? I always feel a mediator's office can be helpful. We tried the mediation here. It was not successful. I will tell you what I think makes this case difficult to mediate. I think I can do better. You don't need to get into that. You know, it's just an inquiry about whether or not you felt it. The truth is we tried, but we're not successful. And I think it's difficult because we all have fiduciary duties, and it's very difficult to horse trade when you have fiduciary duties. That's where it boils down to. Thank you. This was a very helpful argument. I appreciate it. Thank you.
judges: Kelinfeld, Thomas, Burgess